IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**JOHNATHAN KYLE MOREHOUSE,**

                **Petitioner,**

v.                                                                    **Criminal No. 4:19-cr-88**

**UNITED STATES OF AMERICA,**

                **Respondent.**

***MEMORANDUM OPINION & ORDER***

Before the Court is Johnathan Kyle Morehouse's ("Petitioner") motion requesting compassionate release pursuant to 18 U.S.C. § 3582(c). ECF No. 57. The Government opposed the motion and Petitioner replied. ECF Nos. 66, 67. This matter is now ripe for judicial determination. For the reasons below, Petitioner's motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On October 15, 2019, Petitioner was named in a one-count Indictment charging him with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1) (Count One). ECF No. 10. On January 24, 2020, Petitioner pled guilty to Count One without a plea agreement ECF Nos. 24, 25, 26. According to his Presentencing Report ("PSR"), on September 6, 2019, the Major Cybercrime Unit of the United States Army Criminal Investigation Division began an investigation regarding the suspected distribution of child pornography by the defendant. ECF No. 59 at ¶ 6. Agents obtained information connecting the defendant with a certain IP address that had uploaded images of child pornography. On October 6, 2019, agents searched the defendant's residence pursuant to a lawfully obtained federal search warrant and seized several electronic devices. *Id.* During execution of the search warrant, the defendant commented, "I know what this is about, everything you are looking for is on my phone." *Id.* During the investigation, Petitioner

1

waived his *Miranda* rights and confessed to distributing child pornography. *Id.* In his PSR, Petitioner reported that he suffers from insomnia, acid reflux, back issues because of deteriorated disks and pinched nerves as well as that he had a tendon repaired on his right hand. *Id.* at ¶ 52. In all, Petitioner was assessed a total offense level of 30, a criminal history category I, and a recommended guideline provision of 97 to 121 months imprisonment. *Id.* at ¶¶ 76-77. On July 22, 2020, the Court imposed a sentence of eighty-four (84) months imprisonment on Count One, followed by 15 years of supervised release. ECF No. 45. Petitioner is currently incarcerated at Fort Dix FCI with a projected release date of July 8, 2026.

On March 24, 2021, Petitioner filed a *pro se* motion for compassionate release. ECF No. 57. On April 29, 2021, the appointed federal public defender withdrew from the case because Petitioner requested to pursue his motion for compassionate release *pro se.* ECF No. 61. On May 27, 2021, the Government responded in opposition. ECF No. 66. On June 17, 2021, Petitioner filed a supplement memorandum. ECF No. 67. Petitioner alleges that his underlying health conditions place him at increased risk for serious illness should he contract COVID-19 and argues his family circumstances also warrant extraordinary and compelling reasons for his release. Accordingly, Petitioner requests that the Court grant him compassionate release and allow him to begin his period of supervised release.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A petitioner may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly,

a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.* However, the exhaustion requirement may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice. *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) *citing Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). The COVID-19 pandemic, which could result in catastrophic health consequences for petitioners vulnerable to infection, implicates all three exceptions justifying the waiver of the exhaustion requirement. *Miller v. United States*, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. April 3, 2020); *United States v. Perez*, 2020 WL 1456422, at *3–4 (S.D.N.Y. Apr. 1, 2020).

### B. The Compassionate Release Standard

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A)

3

through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. § 1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

**A. The Exhaustion Requirement**

The Court finds that Petitioner did exhaust his administrative remedies prior to bringing his motion. On January 18, 2021, Petitioner filed a formal request with the Warden at Fort Dix FCI and the Warden denied his request February 23, 2021. ECF No. 66 at Exhibit 1. Thus, more than 30 days passed since Petitioner filed his request.

**B. Petitioner's Compassionate Release Request**

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to modify her sentence because of the grave risk COVID-19 poses to individuals with underlying health conditions. During the COVID-19 pandemic, federal courts around the country have found that compassionate release is justified under the circumstances. *Zukerman*, 2020 WL 1659880, at *4 *citing Perez*, 2020 WL 1546422, at *4; *United States v. Colvin*, 2020 WL 1613943, *4 (D. Conn. Apr. 2, 2020); *United States v. Rodriguez,* No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020); *United States v. Jepsen,* No. 3:19-CV-00073 (VLB), 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020); *Gonzalez*, 2020 WL 1536155, at *3; *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020). Unlike the above cases, Petitioner's compassionate release is not justified under the circumstances.

First, Petitioner does not show a potential susceptibility to serious health risks from COVID-19. Petitioner argues that his bulging disks in his back, chronic acid reflux and Post-Traumatic Stress Disorder (PTSD) place him at increased risk of serious illness should he contract COVID-19. ECF No. 57. According to the Centers for Disease Control and Prevention, none of the illnesses that Petitioner cites make him susceptible to get severely ill if he should contract COVID-19.[1] Furthermore, as of March 9, 2021, Petitioner received both doses of the COVID-19 vaccine. ECF No. 57. According to the CDC, the COVID-19 vaccine is "effective at preventing

---

[1] *See* Centers for Disease Control and Prevention, "COVID-19: People with Certain Medical Conditions," *CDC.gov*, (Updated May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

COVID-19 as seen in clinical trial settings."[2] Although individuals who are vaccinated may still contract COVID-19, they are significantly less likely to experience severe symptoms or be hospitalized as compared to unvaccinated individuals. *Id.* Petitioner has not reported any side effects to the vaccine. Therefore, Petitioner has not provided evidence showing that he is at high risk for serious illness due to COVID-19 which warrant extraordinary circumstances for compassionate release. *See United States v. Madison*, No. 2:17-cr-80, ECF No. 88 (E.D. Va. Mar. 19, 2021).[3]

Petitioner also cites his family circumstances as extraordinary circumstances for compassionate release. In his motion, Petitioner argues that his wife and daughter "need him home to protect and provide for them," as his wife suffers from multiple co-morbidities, is afraid to leave their home, and has not been vaccinated. ECF No. 57 at 3-4. However, Petitioner has failed to present evidence showing that his wife is incapacitated and that he is the only available caregiver. *See* USSG §1B1.13, comment. (n.1(C)). Therefore, Petitioner's family circumstances do not establish extraordinary circumstances for compassionate release.

Second, however, Petitioner does show a potential risk of contracting the disease at his prison facility. That is, even if Petitioner were vaccinated, there would still exist a possibility that he *could* contract COVID-19. As of July 30, 2021, the BOP has reported a total of 1709 recovered positive cases of COVID-19 for inmates (0 current, 2 deaths) and 95 current cases (1 current) for

---

[2] *See* Centers for Disease Control and Prevention, "Ensuring COVID-19 Vaccines Work: Vaccine Effectiveness," *CDC.gov*, available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness.html

[3] Sister jurisdictions have similarly held that because the defendant "has now been fully vaccinated, he simply does not show that he suffers from an extraordinary condition that is terminal or severely limits his ability to function in a correctional setting." *United States v. Burks*, No. 3:14-cr-208-MOC-1, 2021 WL 1394857, at *4 (W.D.N.C. Apr. 13, 2021); *see United States v. Smith*, No. 17-cr-20753, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021), *appeal docketed*, No. 21-1209 (6th Cir. Mar. 2, 2021) ("[A]bsent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A).").

staff at Fort Dix FCI.⁴ Despite the BOP's protection measures, individuals housed in prisons remain particularly vulnerable to infection. *See Muniz*, 2020 WL 1540325, at *1; *see also Esparza*, 2020 WL1696084, at *1 (noting that "[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others"). Therefore, the Court need not wait until an outbreak occurs at a specific prison facility to determine that a petitioner has a particularized risk of contracting the disease. *See Zukerman*, 2020 WL 1659880, at *6 *citing Rodriguez*, 2020 WL 1627331, at * 12 ("the Court did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic").

Third, overall, the § 3553(a) factors do not weigh in favor of Petitioner's compassionate release. The seriousness of Petitioner's conduct for his underlying offense remain unchanged. According to his PSR, Petitioner admitted to investigating agents to downloading child pornography but said that he had a "good excuse" for doing so. ECF No. 59 at ¶ 6. According to his own admission, Petitioner admitted to downloading numerous child pornographic images and videos to start collecting them to report them to law enforcement. *Id.* at ¶ 11. Petitioner stated the he was trying to "build a case" against child pornography distributers by distributing images and videos of child pornography to other users to receive other child pornographic images and videos from the unidentified users. *Id.*

Prior to the instant offense, Petitioner had no criminal history. *Id.* at ¶¶ 39-40. In all, Petitioner was assessed a total offense level of 30, a criminal history category I. *Id.* at ¶¶ 76-77. To date, Petitioner has served about 14% of his eighty-four month sentence and, thus, his early

---

⁴ *See* Federal Bureau of Prisons, "COVID-19 Corona Virus," *BOP.gov,* https://www.bop.gov/coronavirus/

7

release would not promote adequate deterrence. *See United States v. Hill*, No. 3:14cr114, 2020 WL 6049912, at *5 (E.D. Va. Oct. 13, 2020) (denying compassionate release where the defendant had "served only 40% of his 188 month sentence, which may not afford adequate deterrence to his criminal conduct"). While in prison, Petitioner has demonstrated some evidence of rehabilitation. To his credit, Petitioner has not received any disciplinary infractions and he has completed various educational courses. ECF No. 57 at Exhibit 2. The Court also notes that there has been limited programming available due to COVID-19 lockdowns. However, as noted by sister courts, a "defendant's rehabilitation alone proves insufficient to warrant a sentence reduction." *See United States v. Woolridge,* No. 3:09CR156 (DJN), 2021 WL 415131, at *7 (E.D. Va. Feb. 5, 2021)

Overall, the Court finds that the § 3553(a) factors do not weigh in Petitioner's favor and his release would not promote the respect for law or provide adequate deterrence. Critically, Petitioner did not show extraordinary or compelling reasons for release due to COVID-19 or based on his family circumstances. Therefore, Petitioner does not qualify for compassionate release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner has not shown an extraordinary and compelling reason to grant compassionate release. Thus, Petitioner's Motion for compassionate release, ECF No. 57, is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED**.

Newport News, Virginia
August 2, 2021

UNITED STATES DISTRICT JUDGE

8